UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CORNELIA C. RAMOS,<br><br>  Plaintiff,<br><br> v.<br><br>WELLS FARGO BANK, N.A.,<br><br>  Defendant. | Case No.18-cv-00762-VKD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 25 |

Plaintiff Cornelia C. Ramos sues Wells Fargo Bank, N.A. ("Wells Fargo") for alleged unlawful conduct concerning an adjustable-rate residential mortgage loan for property located at 1954 Lowney Way in San Jose, California ("Property"). Pursuant to Fed. R. Civ. P. 12(b)(6), Wells Fargo moves to dismiss all claims for relief in Ms. Ramos' First Amended Complaint ("FAC"). Ms. Ramos opposes the motion. Upon consideration of the moving and responding papers,[1] as well as the oral arguments presented at the June 19, 2018 hearing, the court grants Wells Fargo's motion, with leave to amend.[2]

**I. BACKGROUND**

Solely for the purpose of resolving the present motion, the facts alleged in the FAC are deemed true. They are as follows:

Ms. Ramos and her (now deceased) husband purchased the Property in 1993. In June

---

[1] Although Wells Fargo's request for judicial notice is unopposed, the Court finds it unnecessary to consider those papers in resolving this motion.

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

2006, they refinanced the loan on the Property and borrowed $380,000 from World Savings Bank, FSB pursuant to a Deed of Trust and Promissory Note. World Savings Bank subsequently was acquired by Wachovia Corporation. After acquiring Wachovia Corporation, Wells Fargo became the servicer and beneficiary of the loan under the Deed of Trust.

The key issue in this litigation concerns Promissory Note Section 3(F), which provides:

> My unpaid principal balance can never exceed 125% of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

(Dkt. 16, FAC, Ex. A at ECF p. 32). Ms. Ramos contends that this provision means that the total amount owed on the loan can never exceed $475,000.00, i.e.,. 125% of the original loan amount. She claims that Wells Fargo violated this "Principal Balance Cap" by seeking payment of more than $475,000.00. The FAC alleges that in December 2010, Ms. Ramos "received a notice that her principal balance had grown to $518,256.00 exceeding that 125% maximum." (FAC ¶ 10). Thereafter, Ms. Ramos says that she received a number of other notices and demands for payment indicating that her principal balance had increased even more, including one notice received in July 2016 indicating that her principal balance had increased to $673,830.00, and another in October 2017 indicating that her principal balance was $701,222.00. (*Id.* ¶¶ 10-11).

Wells Fargo contends that Section 3(F) of the Promissory Note does not mean that the principal amount *owed* on the loan may never exceed $475,000.00. Rather, the provision means that Ms. Ramos cannot *maintain* a balance in excess of that amount. If she does, then Wells Fargo says that Section 3(F) requires Ms. Ramos to make payments to lower that balance, even if those payments would be larger than what they would otherwise be based on the normal amortization of the loan.

Ms. Ramos filed this action in state court on January 4, 2018, asserting two claims for relief. The first was a claim for declaratory relief in which Ms. Ramos contends "that the Deed of Trust and Promissory Note do not allow Defendants [sic] to increase Plaintiff's principal balance

2

under the loan to over $475,000.00." (Dkt. 1-1, Complaint ¶ 14). The second claim for relief alleged unlawful, unfair, and fraudulent business practices in violation of California Bus. & Prof. Code § 17200.

Wells Fargo removed the matter here, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332. Shortly after, Wells Fargo moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the complaint failed to state a claim for relief. That motion was mooted when Ms. Ramos timely filed the FAC, as a matter of right. Fed. R. Civ. P. 15(a).

The FAC now asserts the following five claims for relief: (1) declaratory relief; (2) violation of the California Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Civ. Code § 1788.17; (3) breach of contract; (4) breach of the covenant of good faith and fair dealing; and (5) violation of California Bus. & Prof. Code § 17200. Wells Fargo moves to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6), arguing that all of Ms. Ramos' claims are time-barred and that the FAC still fails to state a viable claim for relief. For the reasons to be discussed, the court grants Wells Fargo's motion with leave to amend.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. *Id.*

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations

3

must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.

Documents appended to the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Fed. R. Civ. P. 12(b)(6) motion. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

While leave to amend generally is granted liberally, the court has discretion to dismiss a claim without leave to amend if amendment would be futile. *Rivera v. BAC Home Loans Servicing, L.P.*, 756 F. Supp.2d 1193, 1197 (N.D. Cal. 2010) (citing *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996)).

## III. DISCUSSION

Wells Fargo argues that all of Ms. Ramos' claims are barred by the applicable statute of limitations: one year for the Rosenthal Act claim, Cal. Civ. Code § 1788.17; 15 U.S.C. § 1692k(d), and four years for the remaining claims, Cal. Code Civ. Proc. § 337; Cal. Bus. & Prof. Code § 17208. In any event, Wells Fargo argues that, at most, Ms. Ramos' claims would be subject to the residual four-year limitations period in California Code of Civil Procedure section 343, which governs "'[a]n action for relief not hereinbefore provided for' in the code." *Thomson v. Canyon*, 198 Cal. App.4th 594, 606, 129 Cal. Rptr.3d 525 (2011) (quoting Cal. Code Civ. Proc. § 343). Because the FAC indicates that Ms. Ramos first received notice in December 2010 that her total loan balance exceeded 125% of the original loan amount, Wells Fargo says that the present lawsuit was filed at least four years too late.

Ms. Ramos does not dispute Wells Fargo's recitation of the applicable limitations periods. She nevertheless contends that her claims did not begin to accrue until sometime after December

4

2010 and that her claims are timely under the continuous accrual doctrine.

Under California law, "[t]he limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues." *Aryeh v. Cannon Bus. Solutions, Inc.*, 55 Cal.4th 1185, 1191, 151 Cal. Rptr.3d 827, 292 P.3d 871 (2013). "Traditionally at common law, a 'cause of action accrues 'when [it] is complete with all of its elements'—those elements being wrongdoing, harm, and causation.'" *Id.* (quoting *Pooshs v. Philip Morris USA, Inc.*, 51 Cal.4th 788, 797, 123 Cal. Rtpr.3d 578, 250 P.3d 181 (2011)). Here, Ms. Ramos argues that she could not have determined from the December 2010 notice that the loan balance exceeded 125% of the original loan amount. She asserts that the difference between the 125% cap ($475,000.00) and the amount stated in the December 2010 notice ($518,256.00) was too small for her to have known that the principal balance cap had been violated. Additionally, she says that there are too many other charges and fees associated with the loan (e.g., escrow advances and fees associated with default) that could have contributed to the $518,526.00 sum. However, none of these assertions appears in the FAC. Indeed, the FAC indicates that Ms. Ramos was on notice of Wells Fargo's alleged wrongdoing in December 2010, when she "received a notice that her principal balance had grown to $518,256.00 *exceeding that 125% maximum.*" (FAC ¶ 10) (emphasis added).

Ms. Ramos nonetheless maintains that the continuous accrual doctrine applies and, hence, her claims are timely. Under that doctrine, "a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events, but timely as to those within the applicable limitations period." *Aryeh*, 55 Cal.4th at 1192 (citing *Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal.4th 809, 818-22, 107 Cal. Rptr.2d 369, 23 P.3d 601 (2001)). Generally, continuous accrual applies whenever there is a continuing or recurring obligation. *Id.* at 1199. "Because each new breach of such an obligation provides all the elements of a claim—wrongdoing, harm, and causation—each may be treated as an independently actionable wrong with its own time limit for recovery." *Id.* at 1199 (citing *Pooshs*, 51 Cal.4th at 797).

In determining whether the continuous accrual doctrine applies, courts look to the nature of

the obligation allegedly breached. *Aryeh*, 55 Cal.4th at 1200. California courts have held that disputes over monthly billing and payments may trigger application of the continuous accrual doctrine. For example, in *Aryeh*, the California Supreme Court concluded that the continuous accrual doctrine applied to plaintiff's claims concerning improper charges in monthly bills, such that each allegedly unlawful monthly bill triggered a new limitations period. 55 Cal.4th at 1200-01.

However, "if the alleged recurring injuries during the limitations period 'arose out of a single transaction' that occurred before the limitations period, the continuous accrual doctrine does not apply." *Ryan v. Microsoft Corp.*, 147 F. Supp.3d 868, 895-96 (N.D. Cal. 2015) (quoting *State ex rel. Metz v. CCC Info. Servs., Inc.*, 149 Cal.App.4th 402, 418, 57 Cal.Rptr.3d 156 (2007)). Thus, in *Metz*, "allegedly fraudulent statements and admissions following an inaccurate valuation in an insurance claim did not trigger new limitations periods under the continuous accrual doctrine because all of the false statements arose out of the same insurance valuation, which occurred before the limitations period." *Id*. at 896.

Ms. Ramos relies primarily on *Aryeh*, emphasizing that she received several notices and demands for payment from Wells Fargo for amounts over the $475,000.00 cap, with the more recent notices being received, within applicable limitations periods, in July 2016 and October 2017. (FAC ¶¶ 10-11). Wells Fargo, on the other hand, argues that Ms. Ramos' claims are more akin to those in *Metz*. In Wells Fargo's view, the continuous accrual doctrine does not apply to Ms. Ramos' claims because the notices alleged in the FAC all stem from a single transaction—i.e., Ms. Ramos' loan—the terms of which governed the amount she borrowed and the amount due.

Ms. Ramos has not alleged a continuing or recurring obligation. Unlike the recurring obligation in *Aryeh* involving monthly bills and payments, Ms. Ramos alleges that Wells Fargo breached a supposed obligation to avoid having her principal balance pass the $475,000.00 cap. The nature of that alleged obligation is such that the $475,000.00 threshold can be passed only *once*. According to the FAC, the threshold was passed in December 2010 when Ms. Ramos received notice that her principal balance had increased to $518,256.00. Allegations concerning subsequent notices and demands for payment simply demonstrate that the amount owed on Ms.

Ramos' loan had increased even further beyond the $475,000.00 cap that had been passed in December 2010. Ms. Ramos' claims therefore are time-barred, and she has not demonstrated that there are other facts that might be pled to establish equitable tolling.

But, even assuming that Ms. Ramos' claims were timely (or that she could plead other facts demonstrating that the limitations periods were tolled), the Court is not persuaded that she has pled a plausible claim for relief. The entire premise of the FAC—and, indeed, the theory underlying every one of Ms. Ramos' claims—is that the "Principal Balance Cap" in Section 3(F) of the Promissory Note means that the total amount owed on the loan (and consequently, the total amount that Wells Fargo can collect) can never exceed $475,000.00. As discussed, Wells Fargo holds an entirely different view. And, Wells Fargo correctly notes that Ms. Ramos' theory has been rejected by at least four other judges in this district, most recently by Judge Chesney:

> To the extent plaintiffs contend those additional amounts should be deemed part of the principal balance, the Court notes that, in at least three other actions in this district, the same argument has been made with regard to essentially identical loan provisions, and has been, in each instance, "soundly rejected." *See Velasquez v. Wells Fargo, N.A.*, No. 17-CV-03868-KAW, 2017 WL 3267608, at *2 (N.D. Cal. Aug. 1, 2017) (rejecting argument that total payoff amount exceeded percentage "cap" on principal balance); *see also Diamos v. Fay Servicing, LLC*, No. 16-CV-05164-DMR, 2016 WL 7230896, at *4 (N.D. Cal. Dec. 14, 2016) (holding provision placing 115% "cap" on principal balance "not reasonably capable" of being read to preclude lender's ability to recover "interest accrued ... due to the borrower's default[ ]"); *Nadaf-Rahrov v. Shellpoint Mortgage Servicing*, No. 16-CV-2112-RS, at *3 (N.D. Cal. Nov. 23, 2016) (explaining in detail post-default application of "cap" on principal balance; characterizing borrower's argument to contrary as "frivolous").

*Razzak v. Wells Fargo Bank, N.A.*, No. 17-cv-04939-MMC, 2018 WL 1524002 at *9 (N.D. Cal., Mar. 28, 2018).

Ms. Ramos argues that the parties' disagreement over the interpretation of the Promissory Note simply demonstrates that the Note is ambiguous, and she contends that any ambiguity should be construed against Wells Fargo. "A contract term will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." *Westport Ins. Corp. v. N. Cal. Relief*, 76 F. Supp. 3d 869, 879 (N.D. Cal. 2014). Contract interpretation is a question of law for the Court to decide, unless the interpretation depends on the credibility of extrinsic evidence—

in which case, the issue must be left to the trier of fact. *Welles v. Turner Entertainment Co.*, 503 F.3d 728, 735 (9th Cir. 2007). Here, the Court need look no further than the terms of the Promissory Note itself to conclude that Ms. Ramos has not proffered a reasonable interpretation of Section 3(F).

In contending that Section 3(F) means she can never owe more than $475,000.00 on the loan, Ms. Ramos relies entirely on the first sentence of the provision: "My unpaid principal balance can never exceed 125% of the Principal I originally borrowed, called 'Principal Balance Cap.'" (Dkt. 16, FAC, Ex. A at ECF p. 32). However, Section 3(F) goes on to state that "[i]f, as a result of the addition of deferred interest to [Ms. Ramos'] unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that [her] monthly payment is due," Ms. Ramos is then obliged to "pay a new monthly payment." (*Id.*) And, notwithstanding other provisions of the Promissory Note governing payment changes for Ms. Ramos' adjustable-rate mortgage, the "new monthly payment" required by Section 3(F) must be "equal to an amount that will be sufficient to repay [her] then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments." (*Id.*). In other words, Section 3(F) imposes no obligation on Wells Fargo to avoid having the loan balance exceed the "Principal Balance Cap." Instead, Section 3(F) unambiguously means that Ms. Ramos cannot maintain a balance in excess of that amount. If the balance would exceed that threshold, then she must recalculate her monthly payments so that the currently-unpaid principal balance will be paid in full on the maturity date of the loan, even if those payments would exceed the monthly payments she would otherwise be required to make based on the normal amortization of the loan.

Accordingly, the Court concludes that the FAC must be dismissed because the claims are time-barred and because Ms. Ramos has otherwise failed to state a claim upon which relief may be granted.

Federal Rule of Civil Procedure 15(a) provides that the Court should freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). While the decision whether to grant leave to amend is a matter within the Court's discretion, the Court must be guided by the underlying purpose of Rule 15 to "facilitate decision on the merits, rather than on the pleadings or

8

technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal quotations and citation omitted). Leave need not be granted for several reasons, including when the amendment would constitute an exercise in futility. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L.Ed.2d 222 (1962); *Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Although the Court harbors some doubt as to whether Ms. Ramos will be able to amend her pleading to state a plausible claim for relief, it cannot say with certainty that amendment would be futile. Accordingly, Ms. Ramos will be permitted to amend if, consistent with Fed. R. Civ. P. 11, she believes that she can truthfully allege facts that would support a plausible claim for relief.

**ORDER**

Based on the foregoing, the court grants Wells Fargo's motion to dismiss with leave to amend. Leave to amend is limited to those claims pled in the FAC and consistent with the rulings above. If she chooses to amend, Ms. Ramos' Second Amended Complaint must be filed no later than **July 3, 2018**.

To the extent Ms. Ramos intends to assert new or different claims for relief or add new parties, she must make an appropriate motion for leave to amend pursuant to Fed. R. Civ. P. 15. Ms. Ramos may not add new or different claims or parties to an amended complaint without first seeking leave of Court.

**IT IS SO ORDERED.**

Dated: June 19, 2018

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge