UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CORNELIA C. RAMOS,<br><br>    Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | Case No.18-cv-00762-VKD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT WITHOUT LEAVE TO AMEND**<br><br>Re: Dkt. No. 41 |

Plaintiff Cornelia C. Ramos sues Wells Fargo Bank, N.A. ("Wells Fargo") for alleged unlawful conduct concerning an adjustable-rate residential mortgage loan for property located at Lowney Way in San Jose, California ("Property"). Pursuant to Fed. R. Civ. P. 12(b)(6), Wells Fargo moves to dismiss all claims for relief in Ms. Ramos's Second Amended Complaint ("SAC"). Ms. Ramos did not file a response to the motion, the deadline for doing so has passed, and briefing on this matter is closed. Civ. L.R. 7-3. Ms. Ramos also made no appearance at the noticed August 28, 2018 hearing. Upon consideration of the moving papers,[1] as well as the discussion held at the August 28, 2018 hearing, the Court grants Wells Fargo's motion to dismiss without leave to amend.[2]

---

[1] In resolving this motion, the Court finds it unnecessary to consider papers submitted by Wells Fargo for judicial notice.

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Solely for the purpose of resolving the present motion, the facts alleged in the SAC are deemed true. They are as follows:

Ms. Ramos and her (now deceased) husband purchased the Property in 1993. In June 2006, they refinanced the loan on the Property and borrowed $380,000.00 from World Savings Bank, FSB pursuant to a Deed of Trust and Promissory Note. World Savings Bank subsequently was acquired by Wachovia Corporation. After acquiring Wachovia Corporation, Wells Fargo became the servicer and beneficiary of the loan under the Deed of Trust.

Like her prior complaints in this matter, the SAC is based upon Ms. Ramos's interpretation of Promissory Note Section 3(F), which provides:

> **(F) Limit on My Unpaid Principal; Increased Monthly Payment**
>
> My unpaid principal balance can never exceed **125%** of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

Dkt. No. 40-1, SAC, Ex. A at 3. Ms. Ramos reiterates that this provision means that the total amount owed on the loan can never exceed $475,000.00, i.e., 125% of the original loan amount. She claims that Wells Fargo violated this "Principal Balance Cap" by seeking payment of more than $475,000.00. The SAC continues to allege that in December 2010, Ms. Ramos "received a notice that her principal balance had grown to $518,256.00 exceeding that 125% maximum," although the SAC now says that "[a]t that time, she did not realize her principal cap had been violated." Dkt. No. 40, SAC, ¶ 50. Thereafter, Ms. Ramos says that she received a subsequent notice in July 2016 indicating that her principal balance had increased to $673,830.00, and another in October 2017 indicating that her principal balance was $701,222.00. *Id.,* ¶ 51.

The SAC goes on to allege that the Promissory Note requires Wells Fargo to add all accrued interest to the principal balance and that, "in an effort to avoid the effect of the principal balance cap," Wells Fargo "is failing to add unpaid interest to the principal and attempting to

2

collect on unpaid interest separate from unpaid principal." SAC, ¶ 33. Here, Ms. Ramos points to Promissory Note Section 3(E), which provides:

**(E) Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

SAC, Ex. A at 3.

Wells Fargo contends that Section 3(F) of the Promissory Note does not mean that the principal amount *owed* on the loan may never exceed $475,000.00. Rather, the provision means that Ms. Ramos cannot *maintain* a balance in excess of that amount. If she does, then Wells Fargo says that Section 3(F) requires Ms. Ramos to make payments to lower that balance, even if those payments would be larger than what they would otherwise be based on the normal amortization of the loan. As for Section 3(E), Wells Fargo maintains that Ms. Ramos's theory is based on two flawed assumptions: (1) that the total debt Wells Fargo seeks to collect consists entirely of the unpaid principal balance and (2) that all unpaid interest that has accrued since Ms. Ramos defaulted on the loan is added to the principal balance.

Ms. Ramos filed this action in state court on January 4, 2018. Wells Fargo removed the matter here, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. Shortly after, Wells Fargo moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the complaint failed to state a claim for relief. That motion was mooted when Ms. Ramos timely filed a First Amended Complaint ("FAC") as a matter of right. Fed. R. Civ. P. 15(a). The FAC asserted five claims for relief: (1) declaratory relief; (2) violation of the California Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), Civ. Code § 1788.17; (3) breach of contract; (4) breach of the covenant of good faith and fair dealing; and (5) violation of California Bus. & Prof. Code § 17200.

The Court granted Wells Fargo's motion to dismiss the FAC, finding that (1) all of Ms. Ramos's claims were untimely; (2) Ms. Ramos failed to establish a basis for tolling under the continuous accrual doctrine; and (3) she also failed to demonstrate that there were other facts that

3

1  could be pled to establish equitable tolling.  Even assuming that Ms. Ramos's claims were not
2  time-barred, the Court rejected her proffered interpretation of Promissory Note Section 3(F) as
3  implausible.  Because that interpretation was the basis of every one of Ms. Ramos's claims, the
4  FAC was dismissed.  Nevertheless, the Court gave Ms. Ramos leave to amend.  Dkt. No. 39.

The SAC asserts the same five claims for relief as the FAC and, as discussed above, Ms. Ramos bases her claims on the theory that the "Principal Balance Cap" in Promissory Note Section 3(F), in conjunction with Section 3(E), means that (1) the total amount owed on the loan can never exceed $475,000.00, and (2) Wells Fargo violated the "Principal Balance Cap" by failing to add all accrued interest to the principal balance and by attempting to collect unpaid interest separately from the principal balance.

Pursuant to Fed. R. Civ. P. 12(b)(6), Wells Fargo moves to dismiss the SAC, arguing that all of Ms. Ramos's claims are time-barred and that the SAC fails to state a claim for relief in any event.  For the reasons to be discussed, the Court grants Wells Fargo's motion and dismisses the SAC without leave to amend.

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.  *Id*. (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant.  *Id.*

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  This means that the "[f]actual allegations

4

must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. A claim is plausible if its factual content permits the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678.

Documents appended to the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Fed. R. Civ. P. 12(b)(6) motion. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

While leave to amend generally is granted liberally, the court has discretion to dismiss a claim without leave to amend if amendment would be futile. *Rivera v. BAC Home Loans Servicing, L.P.*, 756 F. Supp.2d 1193, 1197 (N.D. Cal. 2010) (citing *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996)).

## III. DISCUSSION

As it did in its motion to dismiss the FAC, Wells Fargo argues that all of the claims asserted in the SAC are barred by the applicable statute of limitations: one year for the Rosenthal Act claim, Cal. Civ. Code § 1788.17; 15 U.S.C. § 1692k(d), and four years for the remaining claims, Cal. Code Civ. Proc. §§ 337, 343; Cal. Bus. & Prof. Code § 17208. Here, Wells Fargo reiterates that because the SAC continues to allege that Ms. Ramos first received notice in December 2010 that her principal balance "exceed[ed] the 125% maximum" (SAC, ¶ 50), the present lawsuit was filed at least four years too late. On Wells Fargo's prior motion to dismiss, Ms. Ramos did not dispute Wells Fargo's recitation of the applicable limitations periods, and as noted, this Court agreed that all of her claims were untimely and that Ms. Ramos identified no viable basis for tolling. Dkt. No. 41 at 4-7.

The only difference here is that the SAC now alleges that when Ms. Ramos received the December 2010 notice, she did not, at that time, "realize her principal cap had been violated." SAC, ¶ 50. Wells Fargo argues that this allegation is insufficient to invoke the "discovery rule" as

5

a basis for tolling Ms. Ramos's claims. The Court agrees.

The "discovery rule" is an exception to the general rule of accrual of a claim for relief and "assumes that all conditions of accrual of the action—including harm—exist, but nevertheless postpones commencement of the limitation period until the plaintiff discovers or should have discovered all facts essential to his cause of action." *Camsi IV v. Hunter Tech. Corp.*, 230 Cal.App.3d 1525, 1536 (1991) (quotations and citations omitted). "In order to rely on the discovery rule for delayed accrual of a cause of action, [a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808 (2005) (internal quotations and citation omitted); *see also California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir.1995) (observing that state law governs the allocation of proof in diversity cases and noting that "[a]ll parties agree that the burden is on [the plaintiff] to plead and prove the facts necessary to toll the limitations period once it is established that it would have otherwise commenced.").

Here, the SAC's allegations demonstrate that Ms. Ramos was aware, or should have been aware, of facts essential to her claims for relief as early as December 2010. According to Ms. Ramos, her loan documents provide that the principal balance cannot exceed $475,000.00. SAC, ¶¶ 18, 38. The SAC goes on to allege that the December 2010 notice she received said that "her principal balance had grown to $518,256.00," an amount that clearly is more than $475,000.00. *Id.*, ¶ 50. In view of the Court's prior order dismissing all of her claims as untimely, Ms. Ramos was on notice that the timeliness of her claims was at issue. Yet the SAC alleges, in highly conclusory fashion and without any supporting facts, that when she received the December 2010 notice, Ms. Ramos did not realize her principal cap had been violated. That sole allegation is insufficient to invoke the "discovery rule." Accordingly, the Court concludes, once again, that Ms. Ramos's claims are untimely and that she has not demonstrated a basis for tolling.

Even assuming that Ms. Ramos's claims were timely (or that she had established a plausible basis for tolling), the SAC still fails to state a claim for relief. As discussed above, Ms.

6

Ramos's theory of the case continues to be that Promissory Note Section 3(F) means that Wells Fargo is precluded from collecting more than $475,000.00 on the loan, no matter how far behind she falls on her payments. On Wells Fargo's prior motion to dismiss, the Court rejected Ms. Ramos's proffered interpretation of Section 3(F) as implausible, noting that the same theory has been rejected by at least four other courts in this district in similar cases. Dkt. No. 41 at 7.

Now pointing to Promissory Note Section 3(E) governing "Deferred Interest; Additions to My Unpaid Principal," Ms. Ramos posits that all unpaid interest becomes part of the principal balance (which is capped) and that, to avoid that cap, Wells Fargo failed to add unpaid interest to the principal and is instead wrongfully attempting to collect unpaid interest separately from the outstanding principal balance. SAC, ¶¶ 28-34. Here, she alleges that Wells Fargo violated a Promissory Note "provision which sets forth that all unpaid interest be added to the principal." *Id*. ¶ 28. However, the SAC identifies no such provision in the Promissory Note, and the Court has not found one. SAC, Ex. A. Next, Ms. Ramos says that "[u]nder the plain language" of the Promissory Note, Wells Fargo "must add unpaid interest to the principal (which is capped)." *Id*. ¶ 29. While Section 2 of the Note provides that interest will be charged on the unpaid principal until the full amount of the principal is paid, Wells Fargo correctly observes that the Note does not require Wells Fargo to reclassify earned and unpaid interest as part of the outstanding principal balance.

Relying entirely on Promissory Note Section 3(E), Ms. Ramos contends that Wells Fargo "cannot maintain an independent line item of debt for unpaid interest separate from unpaid principal balance . . . ." SAC, ¶ 30. However, Section 3(E) cannot reasonably be interpreted to mean that all accrued interest must be added to the principal balance. Section 3(E) provides only that "Deferred Interest" will be added to the principal in the specific circumstance where Ms. Ramos's "monthly payment is insufficient to pay the total amount of monthly interest that is due." SAC, Ex. A at 3. And, "Deferred Interest" is specifically defined as "the amount of interest that is not paid each month . . .." *Id*. In at least one other similar case, Judge Ryu rejected a virtually identical argument made by Ms. Ramos's counsel. *See Diamos v. Fay Servicing, LLC*, No. 16-cv-05164-DMR, 2016 WL 7230896, at \*4 (N.D. Cal., Dec. 14, 2016). Here, as in *Diamos*, nothing in

Section 3(E) says that interest accrued by any other means, including due to Ms. Ramos's default, will be added to the principal balance. Instead, when read together, Sections 3(E) and (F) provide that when the unpaid principal exceeds 125% of the original principal balance, due to the addition of "Deferred Interest," Ms. Ramos is required to make a "new monthly payment" that is "equal to an amount that will be sufficient to repay [her] then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments." SAC, Ex. A at 3. In other words, Sections 3(E) and (F) are designed to "prevent excessive negative amortization of the loan resulting from the borrower making only minimum payments," and do not, as Ms. Ramos contends, limit the amount Wells Fargo may collect on the loan. *Diamos*, 2016 WL 7230896, at *4.

Accordingly, the Court concludes that the SAC must be dismissed because Ms. Ramos's claims are time-barred and she has otherwise failed to state a claim upon which relief may be granted. Ms. Ramos has now had three opportunities to plead a claim for relief. Having failed to file any response to the present motion or to appear at the motion hearing, Ms. Ramos has given this Court no basis to conclude that her claims may be saved by further amendment. The SAC therefore is dismissed without leave to amend.

**ORDER**

Based on the foregoing, Wells Fargo's Fed. R. Civ. P. 12(b)(6) motion to dismiss the SAC is granted, and the SAC is dismissed without leave to amend. The Clerk of Court shall enter judgment and close this file.

**IT IS SO ORDERED.**

Dated: August 28, 2018

VIRGINIA K. DEMARCHI
United States Magistrate Judge

8